IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WHITNEY L. BING,               )
                                         )
           Plaintiff,           )
                                         )
     v.                   )     CIVIL ACTION NO.: 2:12cv978-WC
                                         )
CAROLYN W. COLVIN,         )
Acting Commissioner of Social Security,   )
                                       )
          Defendant.       )

# MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff, Whitney L. Bing, applied for disability insurance benefits, but her application was denied at the initial administrative level. As a result, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which she found Plaintiff "not disabled" at any time through the date of the decision. Plaintiff then sought review from the Appeals Council, but that request was rejected. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 8); Def.'s Consent to Jurisdiction (Doc. 9).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-four years old when the ALJ's decision was issued.  Plaintiff had a high school education and past relevant work experience as a laboratory tester and general office clerk.  Tr. 18.  Following the administrative hearing, and employing the five-step process, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since the alleged onset date."  (Step 1)  Tr. 10.  At Step 2, the ALJ found that Plaintiff suffered from the following severe impairments:  "degenerative disc disease of the cervical spine with mild spondylosis at C5-6 and C6-7; degenerative disc disease of the lumbar spine with mild spondylosis at L5-S1; fibromyalgia; monoclonal gammopathy; obesity; depression; and anxiety."  *Id*.  At Step 3, the ALJ found that Plaintiff's impairments, impairment or combination of impairments did not meet or medically equal any listed impairment.  *Id*.  Next, the ALJ found that Plaintiff retained the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she cannot climb ladders, ropes, or scaffolds. She should stay away from hazardous machinery and unprotected height. She should not be exposed to extreme cold and heat and no concentrated exposure to rain or humidity. She can only do unskilled tasks with SVP1 or 2 and have only casual contact with the public and co-workers. She should have supportive supervision that is non-confrontational and changes should be introduced infrequently and gradually.

Tr. 12.  Following the RFC determination, the ALJ found that Plaintiff could not perform her past relevant work.  (Step 4) Tr. 18.  At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after

consulting with the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 19. The ALJ identified the following occupations as examples: "Inspector Hand Packager," "Small Production Assembler," and "Garment Folder." *Id*. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 1, 2011, through the date of th[e] decision." *Id*.

## IV.    PLAINTIFF'S CLAIMS

Plaintiff requests the court reverse the ALJ's decision because: (1) "the ALJ erred in rejecting the pain testimony provided by Ms. Bing"; (2) "the ALJ failed to consider the effects of Ms. Bing's medications upon her ability to work"; and (3) " the ALJ arbitrarily pick and chose [sic] facts from the evidence to support her administrative findings." Pl.'s Br. (Doc. 12) at 11. All three of these bases for reversal revolve around the ALJ's credibility determinations. The claims are raised in one section, defended in one section, and, to avoid confusion, will be addressed as one section.

## V.    DISCUSSION

In her decision, the ALJ made credibility determinations regarding Plaintiff's subjective complaints of pain, Plaintiff's testimony regarding the side-effects of her medication, and Plaintiff's reported mental limitations. In making the credibility determinations the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 15); *See*

20 C.F.R. § 416.929(c).  However, the ALJ also determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the" RFC.  *Id.*  Plaintiff does not take issue with the process by which the ALJ arrived at her decision, but, rather, with the decision—that Plaintiff's statements were incredible.

In evaluating the ALJ's determination, the court is mindful of the limits of its review.  That is, the court determines whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *Graham,* 129 F.3d at 1422.  "Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."  *Crawford,* 363 F.3d at 1158.  Thus, Plaintiff's burden is tall where she challenges the ALJ's credibility determination.  She must show that the decision is unsupported by "more than a scintilla, but less than a preponderance" of the evidence.  *Richardson,* 402 U.S. at 401.  The court finds that Plaintiff is unable to carry that burden.

The ALJ found Plaintiff's complaints regarding the severity of her pain from fibromyalgia to be incredible.  This is not to say that the ALJ found that Plaintiff did not suffer pain from the condition.  Indeed, the ALJ determined that the condition was "severe" and took its effects into consideration when formulating the RFC.  Additionally, the ALJ clearly articulated her reasons for finding the Plaintiff's testimony regarding the severity of the pain incredible, stating, "For example, [Plaintiff] has received treatment

for this impairment, but that treatment has been essentially routine and conservative in nature, consisting primarily of medication management that have been relatively effective in controlling her symptoms." (Tr. 16).  Plaintiff argues that this is the only rationale for the ALJ's decision and that it conflicts with the evidentiary record of evidence.  Pl.'s Br. (Doc. 12) at 13.

The court does not agree with Plaintiff's characterization.  The ALJ first set forth and summarized the medical evidence of record.  Next, the ALJ explained that based on the evidence set forth above, the record did not support the severity of Plaintiff's complaints, then the ALJ provided the example quoted above.  The ALJ is not required to set forth all of the evidence, reference that evidence in making her decision, then repeat all of the evidence again in explaining her decision.  The court is able to follow the ALJ's rationale, and her decision is supported by the evidence of record set out before her finding.  Certainly the evidence of record shows that Plaintiff suffers severe pain from fibromyalgia.  However, the record also supports the ALJ's finding that the treatment has been relatively conservative and routine in nature.  Plaintiff points the court to her complaints in March of 2011 that her nerves felt like they were "on fire."  *Id*.  However, the record also reflects that Plaintiff's pain was treated, and successfully, with pain medication.  For example, in May of 2011, Plaintiff was admitted to the Jackson Hospital Emergency room with suicidal ideation, complaining that she was depressed and wanted to go to sleep to stop all of the pain.  Tr. 14.  She was transferred to a behavioral center,

treated with medication and discharged after she reported that she was sleeping better, denied suicidal ideations, and her condition had stabilized.  *Id*.  Then, on July 11, 2011, Plaintiff reported feeling okay on her present medication.  Tr. 362.  The court cannot find reversible error with the ALJ's determination, because the record contains substantial evidence in support.

Plaintiff also takes issue with what she calls the ALJ's failure to consider the effects of Plaintiff's medications on her ability to work.  Pl's Br. (Doc. 14).  Here again, Plaintiff points the court to her own testimony, as well as the opinion of Dr. Kent, that Plaintiff would be severely limited by her pain and medications.  The court finds this argument to be without merit.  First, the ALJ did consider the effects of Plaintiff's medications.  The ALJ listed the effects to which Plaintiff testified and discussed them within the section where she made the credibility determination regarding Plaintiff's symptoms.  *See* Tr. 13.  Much of the ALJ's decision revolves around the medication Plaintiff takes, and its effects.

Further, the ALJ discussed and rejected the opinion of Dr. Kent, stating that it was "so extreme" and "conclusory," unsupported by "the clinical findings of record," and "inconsistent with Claimant's admitted activity level."  Tr. 17.  Thus, the ALJ provided "good cause" for the rejection of Dr. Kent's opinion.  *See Phillips*, 357 F.3d at 1240 ("'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's

opinion was conclusory or inconsistent with the doctor's own medical records."). Plaintiff's argument that the ALJ failed to address or provide rationale for the rejection of Dr. Kent's opinion is simply without merit.

Finally, Plaintiff argues the ALJ improperly picked and chose facts from the evidence of record to support her decision. Pl.'s Br. (Doc. 12) at 14. Plaintiff points this court to the ALJ's credibility findings regarding Plaintiff's mental impairments. *Id*. In support of this argument, Plaintiff points to the ALJ's reference to Plaintiff's Global Assessment Form ("GAF") score of 70 from 2011, while failing to mention earlier GAF scores of 45 and 50, and to the ALJ's reference to portions of Dr. Brantley's opinion and not others.

With regard to the GAF scores, this is not a case where the ALJ relied on the direct GAF scores to make her determination. Rather, the ALJ discussed Plaintiff's GAF score of 70 in the context of Plaintiff's admittance to the hospital for suicidal ideations. That is, the ALJ said, "In regards to [Plaintiff's] mental impairments, [she] did try and commit suicide; however, she reported later that day that she was feeling better and it would not have made things better. Within two months of that stay, the record shows her Global Assessment of Functioning (GAF), was rated at 70, indicating no more than mild limitations (Exhibit 16F)." Tr. 16. In other words, the ALJ was describing the improvement of Plaintiff's mental condition, starting with the suicidal ideations and progressing to the GAF score of 70. The GAF score of 40 was taken just a few days after

10

Plaintiff was admitted to the hospital for suicidal ideation, Tr. 328-29.  The GAF score of

70 was assessed on July 12, 2011.  Then, on July 13, 2011 Plaintiff stopped taking her

medications, and received a GAF score of 50 on July 25, 2011.  *See* Tr. 590-91.  By

August 31, 2011, Plaintiff reported that she was again taking her medicine, sleeping

better, and felt "ok."  Tr. 383.  The court does not find that the ALJ picked and chose

specific facts in support of her decision, but that she merely listed the bases for her

reasoning and explained why she did not find Plaintiff's complaints to be entirely

credible.

 As to the Dr. Brantley's statements, Plaintiff points to this portion of the ALJ's

decision:

> Dr. Brantley noted that [Ms. Bing] had an unremarkable mental status
> examination and he could not find any support for a clear pain disorder
> with features of anxiety or depression. He opined that the medications
> prescribed to [Ms. Bing] is effective and she is responding nicely. He
> further opined that she is improving and has the potential for significant
> improvement with her current regimen of medication and counseling
> services. Additionally, [Ms. Bing] has described daily activities that are not
> limited to the extent one would expect, given the complaints of disabling
> symptoms and limitations. She reported that she cares for her pet, read, play
> soduko, visit with family and friends, goes to ladies dinners, handle money,
> drive, walk, shops in stores, do household chores, and uses the computer.

Pl.'s Br. (Doc. 12) at 15 (citing to Tr. 16-17).  To this, Plaintiff states that she "fails to see

where Dr. Brantley writes that 'he could not find any support for a clear pain disorder

with features of anxiety or depression'" and that the "ALJ also failed to mention that Dr.

Brantley expressed that "Prognosis was difficult to predict due to a multitude of health-

related problems." *Id.* (citing Tr. 363).  As to the missing quote from Dr. Brantley, that can be found on page 362 of the record.  As to Dr. Brantley's assessment that a prognosis would be difficult to predict, the ALJ did not rely on Dr. Brantley's opinion for a prognosis, other than to say that Plaintiff had the *potential* for significant improvement. Rather, the ALJ relied on Dr. Brantley's assessments following Plaintiff's suicidal ideations.  *See* Tr. 16-17.  As the Commissioner points out, there were many other opinions expressed by Dr. Brantley regarding Plaintiff's skills, response to medicine, concentration, attention, and memory, and thought and processing, that support the ALJ's determination and were not mentioned in the decision.  If the ALJ were required to mention every piece of evidence, the decision would simply mirror the record.  The court does not find that the ALJ picked and chose facts in support of her decision, and that the record as a whole supports the ALJ's findings.

## VI.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 6th day of February, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE